**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TOMPKINS-CORTLAND COUNTIES
BUILDING & CONSTRUCTION
TRADES COUNCIL, MAINTENANCE
DIVISION,**

       **Plaintiff,**

 vs.          5:16-cv-00429
             (MAD/ATB)
**CORNELL UNIVERSITY,**

       **Defendant.**
_____

**APPEARANCES:**        **OF COUNSEL:**

**LIPSITZ GREEN SCIME**      **RICHARD D. FURLONG, ESQ.**
**CAMBRIA, LLP**
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Attorneys for Plaintiff

**FOX ROTHSCHILD, LLP**      **JAMES M. LEMONEDES, ESQ.**
100 Park Avenue, Suite 1500
New York, New York 10017
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 15, 2016, Tompkins-Cortland Counties Building & Construction Trades Council, Maintenance Division ("Plaintiff") commenced this action pursuant to Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185). *See* Dkt. No. 1 ¶ 1. Plaintiff alleges that Cornell University ("Defendant") breached a collective bargaining agreement between the parties by failing to arbitrate the merits of a particular grievance. *See id.*

Currently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* Dkt. No. 8.

## II. BACKGROUND

According to Plaintiff's complaint, on or about November 25, 2015, Defendant terminated Larry Jordan, a temporary craft maintenance building trade laborer. *See* Dkt. No. 1 ¶¶ 7-8. On or about November 30, 2015, Plaintiff filed a grievance with Defendant alleging that Defendant's termination of Larry Jordan was "without just cause" and in violation of the collective bargaining agreement ("CBA") between the parties. *See id.* ¶ 8; Dkt. No. 1-2. On December 2, 2015, Alan L. Mittman, Defendant's Director of Workforce Policy and Labor Relations, responded and claimed that temporary employees (including Larry Jordan) are not covered by the CBA. *See* Dkt. No. 1 ¶ 9; Dkt. No. 1-3.

On December 15, 2015, Plaintiff's President, David Marsh, sent an e-mail to Mr. Mittman arguing that the CBA explicitly covers temporary employees. *See* Dkt. No. 1 ¶ 11; Dkt. No. 1-4. Article 1 of the CBA provides that "[Defendant] recognizes [Plaintiff] as the exclusive representative for . . . building trade laborers, including journeypersons, apprentices and temporary employees . . . ." Dkt. No. 1-1 at 6. Article 30 of the CBA provides that Defendant has the right "to establish rules and procedures for discipline and discharge employees for just cause . . . ." *Id.* at 32.

On January 25, 2016, Mr. Marsh sent a third email to Mr. Mittman, again requesting that Defendant process the grievance. *See* Dkt. No. 1 ¶ 12; Dkt. No. 1-5. On March 1, 2016, Plaintiff served Defendant with a Notice of Intention to Arbitrate pursuant to N.Y. C.P.L.R. § 7503(c). *See* Dkt. No. 1 ¶ 13; Dkt. No. 1-6. Plaintiff alleges that "[a]t the present time Defendant continues to claim that temporary employees are not covered or otherwise entitled to 'just cause'

protections set forth in the CBA, and thus refuses to arbitrate the substantive merits of the grievance." Dkt. No. 1 ¶ 17.

Plaintiff has attached to its complaint the e-mail correspondence between each party's attorneys. *See* Dkt. No. 1-7. In an e-mail dated March 4, 2016, from Stephen Ploscowe (one of Defendant's attorneys) to Richard Furlong (Plaintiff's attorney), Mr. Ploscowe wrote that "[Defendant] will agree not to contest the arbitrability of the grievance before the NYS Court if you agree to the following issues to be presented to the arbitrator: 1. Is the termination of a temporary employee subject to the terms of the [CBA] . . . ?" *Id.* at 11. In response, Plaintiff's attorney, Mr. Furlong, claimed that that issue "goes to substantive arbitrability which, absent the agreement of the parties to submit to the arbitrator, is vested exclusively with the court." *Id.* at 8. The attorneys disputed this over several e-mails – Plaintiff's attorney claiming that an arbitrator has no authority to decide whether the termination of a temporary employee is subject to the terms of the CBA, and Defendant's attorney claiming that the arbitrator has the authority to make that decision. *See id.* at 2-8. After the parties could not agree on that issue, Plaintiff filed the present action, alleging that Defendant breached the CBA by refusing to arbitrate the merits of the grievance, and asking the Court to determine whether the termination of a temporary employee is subject to the terms of the CBA. *See* Dkt. No. 1 ¶¶ 19-21.

Defendant argues that the complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* Dkt. No. 8-3 at 1. Defendant claims that the Court does not have subject matter jurisdiction over Plaintiff's claims since "[t]here is no 'case or controversy' for the court to resolve between the parties because [Defendant] has already agreed to arbitrate the grievance filed by Larry Jordan regarding his termination." *Id.* at 6. Defendant further argues that even if the Court has subject matter

3

jurisdiction, the claim should be dismissed because the arbitration clause is sufficiently broad to give the arbitrator the authority to decide arbitrability (i.e., the arbitrator has the authority to decide whether this particular dispute falls within the arbitration clause). *Id.* at 7.

Plaintiff counters that even though Defendant has agreed to arbitrate, the arbitration clause does not permit the arbitrator to decide arbitrability, and therefore, the issue of arbitrability should be decided by the Court. *See* Dkt. No. 10 at 3-4.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.     Arbitrability**

Questions of arbitrability arise in two situations: "(1) when parties disagree whether an arbitration clause covers a particular dispute; and (2), when the parties disagree not about the scope of the arbitration clause but about 'whether there is even a valid agreement to arbitrate in effect at a particular time.'" *Schneider v. Kingdom of Thailand*, No. 10 Civ. 2729, 2011 WL 12871599, *4 (S.D.N.Y. Mar. 14, 2011) (quoting *Acequip Ltd. v. American Eng'g Corp.*, 315 F.3d 151, 155-56 (2d Cir. 2011)) (other citations omitted). Generally, "the question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). As the Supreme Court has held, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Id.* (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964)) (internal quotation marks omitted). However, the issue of arbitrability can be decided by the arbitrator if a party can show

"by clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended the question of arbitrability [to] be decided by the arbitrator." *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)) (internal quotation marks omitted).

Moreover, courts have held that "sweeping language" in an arbitration clause, such as a clause that states that any or all controversies are to be settled by arbitration, is "sufficient[] . . . to indicate an intent to have arbitrability decided by the arbitrators." *Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (citing *Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884, 888 (N.Y. 1997)). For example, the Second Circuit has held that an arbitration clause that stated "[a]ny and all controversies . . . concerning any account, transaction, dispute, or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration" was sufficiently sweeping to allow an arbitrator to decide the issue of arbitrability. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (emphasis omitted); *see also Ryan, Beck & Co., LLC v. Fakih*, 268 F. Supp. 2d 210, 221 (E.D.N.Y. 2003) (holding that an arbitration clause that stated "all disputes . . . arising out of or relating to [the defendant's] Accounts, . . . or any construction, performance or breach of this or any other agreement between [the parties] will be settled by arbitration" was broad enough to allow the arbitrator to decide arbitrability). However, absent "clear and unmistakable" evidence or "sweeping language" in an arbitration clause, "the court must determine whether a given issue falls within the scope of the parties' undertaking to accept arbitration." *PaineWebber*, 81 F.3d at 1198.

Here, the parties do not dispute that there is a valid agreement to arbitrate. Instead, the arbitrability question is whether the arbitration clause covers the particular dispute in this case. *See* Dkt. No. 10 at 7. Specifically, the arbitrability question is whether the parties agreed to

6

arbitrate the issue of temporary employee coverage in the CBA. The arbitration clause provides as follows:

> When [Defendant's] response fails to satisfy [Plaintiff], [Plaintiff] may demand arbitration of the matter by submitting that demand in writing to [Defendant] within ten (10) working days of the Step 3 response . . . .
>
> The jurisdictional authority of the arbitrator is defined and limited to the determination as to whether there have been violations of the provision or provisions of the Agreement as set forth in the written grievance; the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement. The decision of the arbitrator shall be based exclusively on evidence presented at the arbitration hearings and shall be final and binding on all involved parties . . . .

Dkt. No. 1-1 at 10-11. Since the issue of arbitrability is not mentioned in the arbitration clause, there is no "clear and unmistakable evidence" that the parties intended to submit the issue of arbitrability to the arbitrator. *See Storm*, 584 F.3d at 406. Thus, the Court must determine whether the language is sufficiently sweeping to indicate an intent of the parties to have arbitrability decided by the arbitrator. *See Shaw Group*, 322 F.3d at 121.

Unlike *PainWebber* and *Fakih*, there is no sweeping language in this clause providing that "all" or "any" disputes that arise between the parties should be settled by the arbitrator. *See PainWebber*, 81 F.3d at 1199; *Fakih*, 268 F. Supp. 2d at 221. Instead, the clause provides that the arbitrator's authority is "defined and limited to the determination as to whether there have been violations of the provision or provisions of the Agreement as set forth in the grievance . . . ." Dkt. No. 1-1 at 11. The arbitrator has the authority to determine if a provision of the CBA was violated, but the clause mentions nothing about the arbitrator's authority to deal with any other types of disputes between the parties. *See id.*

Defendant relies on *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015), where the Second Circuit held that the arbitration clause in that case was sufficiently broad to allow the arbitrator to decide arbitrability. *See id.* at 898. There, the arbitration clause provided that if there was a dispute regarding "the right of termination, or the reasonableness thereof, the dispute shall be settled by arbitration." *Id.* (internal quotation marks and citation omitted). The clause further stated that if "*any other dispute* arises between the parties hereto in connection with the terms or provisions of this Agreement, either party . . . may elect to submit the dispute to binding arbitration." *Id.* (internal quotation marks and citation omitted). The Second Circuit found that "the[] two clauses taken together grant the arbitrators jurisdiction over disputes concerning the Agreement that is 'inclusive, categorical, unconditional, and unlimited.'" *Id.* (quoting *PainWebber*, 81 F.3d at 1199).

Here, the language in the arbitration clause is narrower than the clause in *Benihana*. There is no language in this arbitration clause that gives the arbitrator the authority to decide "any other dispute" between the parties. *See* Dkt. No. 1-1 at 11. The arbitrator is limited to determining whether there was a violation of the CBA. *See id.* As such, there is no indication that the parties intended arbitrability to be decided by the arbitrator, and that issue is properly before the Court.[1] *See Livingston*, 376 U.S. at 649.

---

[1] The only issue presently before the Court is which entity, the Court or the arbitrator, should decide whether the parties agreed to arbitrate the issue of temporary employee coverage in the CBA. As a result of this Memorandum-Decision and Order, the Court has decided that the arbitrability question is properly before the Court, and the Court will decide whether the parties agreed to arbitrate the issue of temporary employee coverage in the CBA. Upon the parties moving for summary judgment, the Court must first determine the breadth of the arbitration clause in the CBA. If the Court determines that the arbitration clause is sufficiently broad, the ultimate determination of whether temporary employees are covered by the CBA will be decided by the arbitrator. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). If the Court determines that the arbitration clause is narrow, the Court will

**C.      Subject Matter Jurisdiction**

Defendant argues that, since it has agreed to arbitrate the dispute, Plaintiff's claims are moot and the Court lacks subject matter jurisdiction to hear them. *See* Dkt. No. 8-3 at 6-7. Defendant claims that "[Plaintiff's] effort to have the Court decide this matter is no less than a request for an unconstitutional advisory opinion, as there is no case or controversy for the Court to address." *Id.* at 7. Plaintiff insists that its claims are not moot since the issue of substantive arbitrability should be decided by the Court, and not the arbitrator. *See* Dkt. No. 10 at 4.

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). "Federal Courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). Thus, a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

---

decide whether temporary employees are covered by the CBA as long as the dispute is not within the purview of the arbitration clause. *See id.* Unless informed otherwise, no additional issues remain for the Court to decide.

The Court notes that the provision regarding temporary employee coverage in the CBA provides as follows: "[Defendant] recognizes [Plaintiff] as the exclusive representative for electricians and lineworkers, painters, plumbers, steamfitters, controls mechanics, welders, refrigeration mechanics, carpenters, masons, sheet metal workers; and, building trade laborers, including journeypersons, apprentices and temporary employees (except temporary student trades assistants whom [Defendant] is free to hire as it deems necessary provided no regular building trade laborer is on lay off status under this Agreement) in such jobs, but excluding supervisors, all other employees for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment. Any and all such employees shall receive at least the minimum wages and work under the conditions of this Agreement." *See* Dkt. No. 1-1 at 6. Another provision of the CBA provides that Defendant has the authority "to establish rules and procedures for discipline and discharge employees for just cause . . . ." *Id.* at 32.

9

outcome." *Id.* (quoting *Already LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)) (internal quotation marks omitted).

Here, as discussed above, because the issue of arbitrability is properly before the Court, Plaintiff's claims are not moot. Although the parties have agreed to arbitrate the merits of the underlying dispute, the arbitrability question must be resolved by the Court, and not the arbitrator. Moreover, Defendant's reliance on *Clark v. New York's Health and Human Service Union*, No. 04 Civ. 7658, 2006 WL 662171 (S.D.N.Y. Mar. 15, 2006) is misplaced. There, an employee sued her union for not pursuing arbitration when the employee was terminated. *See id.* at *1. After she filed suit, the union agreed to arbitrate her termination. *See id.* The court dismissed the claim as moot because the issue to be adjudicated (i.e., whether the union would arbitrate the employee's termination) was resolved when the union agreed to arbitration. *See id.* at *2. Although this case is similar to *Clark* to the extent that both parties have agreed to arbitrate the underlying dispute, there was nothing left for the court to decide in *Clark*. *See id.* Here, since the Court still must decide the arbitrability issue, Plaintiff's claims are not moot, and the Court has subject matter jurisdiction over them.

## D. N.Y. C.P.L.R. § 7503

Plaintiff served Defendant with a Notice of Intention to Arbitrate pursuant to N.Y. C.P.L.R. § 7503(c). *See* Dkt. No. 10 at 8; Dkt. No. 1-6. Plaintiff argues that, since Defendant did not move to stay the arbitration within twenty days, "Defendant is precluded from objecting that a valid agreement to arbitrate has not been made." Dkt. No. 10 at 8. However, Defendant has agreed to arbitrate the merits and is not disputing the validity of the agreement to arbitrate. *See* Dkt. No. 8-3 at 9. As such, this provision is inapplicable in the present case.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 8) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 18, 2016
      Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge